UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARRIE ANN DE BRUIN,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br><br>Defendant. | Case No.18-cv-03802-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 23 |

Plaintiff Carrie De Bruin appeals a final decision by defendant Commissioner of Social Security ("Commissioner")[1] denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 423, 1381. The parties filed cross-motions for summary judgment. Dkt. Nos. 20, 23, 24. Pursuant to the Court's order (Dkt. No. 13), each side also submitted statements of the administrative record. Dkt. Nos. 20-1, 23-1.[2] The matter was submitted without oral argument. Upon consideration of the moving and responding papers, the relevant evidence of record, and for the reasons set forth below, Ms. De Bruin's motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order.[3]

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted in place of defendant Nancy A. Berryhill.

[2] Ms. De Bruin did not submit a reply to the Commissioner's statement of the administrative record.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

# I.     STANDARD FOR DETERMINING DISABILITY

A claimant is considered disabled under the Act if she meets two requirements.  First, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience.  *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step sequential analysis:

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not disabled.  If not, the analysis proceeds to step two.

At step two, the ALJ assesses the medical severity of the claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, 20 C.F.R. §§ 404.1520(d), 416.920(d), she is disabled.  *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the evaluation proceeds to step three.

At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Commissioner's Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If so, a conclusive presumption of disability applies.  If not, the analysis proceeds to step four.

At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past work despite her limitations.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still perform past work, then she is not disabled.  If the

claimant cannot perform her past work, then the evaluation proceeds to step five.

At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four. The Commissioner has the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

## II. BACKGROUND

Ms. De Bruin was born in 1971 and was 45 years old at the time the ALJ rendered the decision under consideration here. She obtained a GED, with no other specialized or vocational training. In April 2004, Ms. De Bruin had spinal fusion surgery at the L4-L5 segment of the lumbar spine; in May 2011 she had a thyroidectomy; and in May 2015 her gallbladder was removed. In 2015, Ms. De Bruin also sought treatment, complaining of pain in her (dominant) left hand following intravenous placement in connection with her gallbladder surgery. Additionally, the record indicates that following her separation from her husband in or around April 2008 (and subsequent divorce), Ms. De Bruin reported feeling depressed and anxious and also sought treatment for complaints of chest pain. She last worked in April 2009 as a case manager at John Muir Hospital.

In March 2014, Ms. De Bruin filed a claim for DIB and SSI, initially alleging disability as of April 30, 2009 due to spinal fusion, arthritis, neuropathy, degenerative disc disease, tachycardia and depression. AR[4] 250-251. She subsequently amended the alleged onset of disability to November 6, 2010, a date that coincides with an orthopedic evaluation by consultative examining physician Kara Flavin, M.D. *Id*. at 347.

Before filing the DIB/SSI claim at issue in the present matter, Ms. De Bruin previously filed DIB and SSI applications, which were denied on December 8, 2010. As to those prior applications, the ALJ made the following observation:

> The claimant's prior applications for Title II and Title XVI benefits were denied on December 8, 2010. The claimant did not appeal the

---

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 15.

> determinations and they became administratively final.  I find no
> basis to reopen the prior applications.  Therefore, the earliest date
> the claimant could be found disabled is December 9, 2010.

*Id*. at 15.  Ms. De Bruin does not refute these statements.  Nor does she challenge the ALJ's

decision not to open the prior denial of disability payments.

As for the DIB/SSI application presently at issue, it was denied initially and upon

reconsideration, and Ms. De Bruin requested a hearing before an ALJ.

ALJ E. Alis held a hearing on November 8, 2016.  Ms. De Bruin appeared and testified at

the hearing, as did a vocational expert.  *Id*. at 34-68.

On February 6, 2017, the ALJ issued a decision concluding that Ms. De Bruin is not

disabled under the Act.  *Id*. at 15-26.  At step one of the sequential analysis, the ALJ found that

Ms. De Bruin met the insured status requirement of the Act through December 31, 2014 and had

not engaged in substantial gainful activity since the alleged onset date of November 6, 2010.  *Id*. at

17.  At step two, the ALJ found that Ms. De Bruin has the following severe impairments:

degenerative disc disease, arrhythmias and anxiety disorder.  *Id*.; 20 C.F.R. §§ 404.1520(c),

416.920(c).  However, at step three, the ALJ concluded that Ms. De Bruin does not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, 416.926.  AR 18.  The ALJ further found that Ms. De

Bruin has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b),

with certain postural, environmental and mental limitations as follows:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift
> and/or carry 20 pounds occasionally and 10 pounds frequently, sit 6
> hours in an 8-hour workday, stand 6 hours in an 8-hour workday and
> walk 6 hours in an 8-hour workday.  She can frequently balance,
> never climb ladders/ropes/scaffolds, and occasionally climb
> stairs/ramps, stoop, kneel, crouch or crawl.  She cannot work around
> dangerous moving mechanical parts or at unprotected heights.
> Mentally, the claimant can perform simple, routine tasks and make
> simple decisions.  She can tolerate occasional interaction with
> supervisors but no interactions with the public.  She can
> occasionally interact with coworkers but not in tandem, team or
> group settings.

*Id.* at 19.

At step four, the ALJ found that Ms. De Bruin is not capable of performing any past relevant work. He further noted that transferability of job skills is immaterial because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*. at 25. At step five of the sequential analysis, the ALJ concluded that in view of Ms. De Bruin's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. *Id*. at 25-26.

The Appeals Council denied Ms. De Bruin' request for review, and the ALJ's decision became the final decision of the Commissioner. *Id*. at 1-3.

Ms. De Bruin now seeks judicial review of that decision, arguing that the ALJ erred in three respects. First, she argues that the ALJ did not properly evaluate the medical opinions of Dr. Kara Flavin and consultative examining clinical psychologist, Ahmed El-Sokkary, Psy.D. Second, Ms. De Bruin contends that the ALJ improperly discounted her testimony and statements about her symptoms, without providing clear and convincing reasons supported by substantial evidence. Third, Ms. De Bruin argues that the ALJ failed to properly consider the third-party statement of her friend, Ralph Ligons, Jr. The Commissioner contends that the ALJ's decision is correct and free of legal error.

### III.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the

administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966

F.2d at 1257*; Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to

support more than one rational interpretation, the Court must defer to the decision of the

Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## IV.    DISCUSSION

### A.    The ALJ's Evaluation of Medical Opinions

Ms. De Bruin argues that the ALJ erred in giving only "partial weight" to the opinion of

consultative examining physician Kara Flavin, M.D., without providing sufficient reasons

supported by substantial evidence. As for consultative examining clinical psychologist, Ahmed

El-Sokkary, Psy.D., Ms. De Bruin does not appear to challenge the ALJ's decision to give Dr. El-

Sokkary's opinion "great weight." Rather, Ms. De Bruin contends that the ALJ erred by failing to

incorporate in his RFC assessment all of the functional limitations noted in Dr. El-Sokkary's

report.

"Cases in this circuit distinguish among the opinions of three types of physicians:

(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant

(nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "As a general

rule, more weight should be given to the opinion of a treating source than to the opinion of doctors

who do not treat the claimant." *Id*. "The opinion of an examining physician is, in turn, entitled to

greater weight than the opinion of a nonexamining physician." *Id*.

"As is the case with the opinion of a treating physician, the Commissioner must provide

'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining

physician." *Id*. "And like the opinion of a treating doctor, the opinion of an examining doctor,

even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that

are supported by substantial evidence in the record." *Id*. at 830-31. "The ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989) (quotations and citation omitted).

Regardless of its source, medical opinions are weighed according to several factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and the medical source's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).[5] The Court reasonably infers that the ALJ considered each of these factors, inasmuch as Drs. Flavin and El-Sokkary each examined Ms. De Bruin only once, and the ALJ indisputably considered and assessed their reports, which noted their respective specializations.

### 1. Kara Flavin, M.D.

On November 6, 2010, Dr. Flavin conducted an orthopedic evaluation of Ms. De Bruin. Dr. Flavin's report indicates that she is a Board Eligible Physical Medicine and Rehabilitation physician. AR 448. Other than a review of Ms. De Bruin's Adult Disability Report (Social Security Administration Form 3368), Dr. Flavin's report indicates that her only other source of information was Ms. De Bruin, whose chief complaints were noted to be low back pain and bilateral leg pain. *Id*. at 444. Dr. Flavin noted that Ms. De Bruin stated she is able to tend to her personal care and grooming, but occasionally needed help tying her shoes and cutting her toenails. Ms. De Bruin also reported an inability to do any housework or yardwork due to her low back pain. *Id*. at 445.

Dr. Flavin observed that Ms. De Bruin was able to walk into the exam room without assistance, "but had a notably antalgic gait," and that she "shift[ed] often while sitting in a chair." *Id*. at 446. While Ms. De Bruin was able to get on and off of the exam table, and remove her shoes and socks, by herself, Dr. Flavin stated that she needed help retying her right shoe. *Id*.

During the exam, Dr. Flavin noted that Ms. De Bruin walked with a limp favoring her left leg and that she was unable to do heel-walking, toe-walking, or a tandem gait due to her low back pain. *Id*. Ms. De Bruin stated that she uses a single-point cane, which was not prescribed, and which she did not bring to the exam. Straight-leg raising tests in a seated position were negative

---

[5] Although the Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in 2017, there appears to be no dispute that those revisions do not apply to Ms. De Bruin's claim for benefits, which was filed before those revisions went into effect.

on the right.  Ms. De Bruin noted an increase in low back pain, but no radicular symptoms, with a straight-leg raise test on the left.  *Id*. at 447.  Dr. Flavin also evaluated Ms. De Bruin's range of motion.  *Id*. at 446-447.

Dr. Flavin noted that Ms. De Bruin reported "diffuse tenderness to palpation over the bilateral lumbosacral spinous processes as well as the facet joints and paraspinal muscles."  *Id*. at 447.  Ms. De Bruin declined to perform a facet loading maneuver.  Dr. Flavin observed that she has "well-healed surgical scars" and found no evidence of paravertebral muscle spasm or of spasticity in Ms. De Bruin's lower extremities.  *Id*.  With respect to motor strength, muscle bulk and tone, Dr. Flavin found that Ms. De Bruin had "4/5 strength with bilateral hip flexors and knee extensors which appear mainly due to giveaway weakness and pain," as well as "5/5 strength in bilateral ankle dorsiflexors, ankle plantar flexors, and long toe extensors."  *Id*.

Dr. Flavin diagnosed Ms. De Bruin with "[c]hronic and nonspecific axial low back pain with possible left radiculopathy," although Dr. Flavin noted that her "exam was limited by pain and giveaway weakness."  *Id*.  Dr. Flavin opined that due to chronic low back pain, Ms. De Bruin has the ability to stand/walk up to four hours; sit up to four hours; and lift/carry 20 pounds occasionally and 10 pounds frequently.  *Id*. at 448.  Dr. Flavin stated that a cane did not appear to be medically necessary.  *Id*.  While Dr. Flavin found no limits in Ms. De Bruin's manipulative abilities to reach, handle, finger and feel, she stated that due to chronic low back pain, Ms. De Bruin should never climb, balance, stoop, kneel, crouch, or crawl.  *Id*.  Additionally, Dr. Flavin opined that Ms. De Bruin should not work at heights or around heavy machinery, but otherwise concluded that she had no limitations with respect to working around extremes of temperature, chemicals, dusts, fumes, gases, or excessive noise.  *Id*.  According to Dr. Flavin, Ms. De Bruin's symptoms would impose limitations for 12 continuous months.  *Id*. at 447.

The ALJ gave Dr. Flavin's opinion "partial weight" and proffered two reasons for doing so.  First, the ALJ noted that Dr. Flavin's opinion was rendered in connection with Ms. De Bruin's prior disability claim, and the ALJ posited that Dr. Flavin "potentially relied on evidence not included in the current record."  *Id*. at 23.  Second, the ALJ stated that "Dr. Flavin's postural limitations appear excessive in light of the modest physical examination findings during medical

8

visits." *Id*.

Preliminarily, there appears to be no serious dispute as to the legal standard that applies to the ALJ's proffered explanation, i.e., that he was required to provide "specific and legitimate" reasons for partially discounting Dr. Flavin's opinion. The Commissioner argues that the ALJ's opinion was controverted and that the "specific and legitimate" standard applies. Dkt. No. 23 at 4. Indeed, Ms. De Bruin also argues in her opening and reply papers that the ALJ is required to provide "specific and legitimate" reasons for giving "partial weight" to Dr. Flavin's opinion. Dkt. No. 20 at 6-7; Dkt. No. 24 at 5. In portions of her briefs, Ms. De Bruin notes that Dr. Flavin's opinion was uncontroverted by other treating and examining doctors, but those arguments appear to be directed to the Commissioner's characterization of the medical evidence (discussed below), rather than to the applicable legal standard. In any event, insofar as Ms. De Bruin contends that the ALJ was required to provide "clear and convincing" reasons for not giving more weight to Dr. Flavin's opinion, Ms. De Bruin fails to convince.

As noted above, the ALJ explained that he gave less weight to Dr. Flavin's opinion because it was rendered in connection with Ms. De Bruin's prior disability claim and Dr. Flavin "potentially relied on evidence not included in the current record." AR 23. Ms. De Bruin did not challenge the ALJ's decision not to reopen her prior disability claim; and, pointing out that Dr. Flavin's opinion precedes the earliest date (i.e., December 9, 2010) Ms. De Bruin could be found disabled on her present claim, the Commissioner contends that the ALJ appropriately gave the opinion less weight. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164-65 (9th Cir. 2008) (finding that the ALJ did not err in determining that plaintiff's carpal tunnel syndrome was not a severe impairment where the only medical evidence relating to that condition was a physician's letter pre-dating plaintiff's alleged onset of disability and follow-up notes indicating improvement in plaintiff's condition); *see also Green v. Berryhill*, 731 Fed. App'x 596, 598 (9th Cir. 2018) (stating that "[t]he ALJ was not required to discuss earlier evidence that was not probative of [plaintiff]'s condition during the relevant time period for this application."). However, the record reflects that the ALJ did give Dr. Flavin's opinion at least some weight, even though the opinion predates the pertinent disability period by about a month.

The ALJ's primary concern appeared to be that Dr. Flavin "potentially" relied on evidence that is not included in the present record. AR 23. If the ALJ meant that he could not determine on what evidence Dr. Flavin relied for her opinion and feared it might not be evidence properly before the ALJ in this proceeding, that reason for discounting Dr. Flavin's opinion is not supported by substantial evidence. As noted above, Dr. Flavin's report indicates that, other than Ms. De Bruin's Adult Disability Report, Dr. Flavin's opinion is based on information she received from Ms. De Bruin during the examination and Dr. Flavin's own findings. *Id*. at 444. Accordingly, to the extent the ALJ gave only partial weight Dr. Flavin's opinion because of purported ambiguity about the evidence on which she relied, that reason is not a legitimate reason for discounting her opinion. However, to the extent, the ALJ partially discounted Dr. Flavin's opinion because it predates the disability period, that reason is a legitimate reason for discounting the opinion.

The ALJ also discredited Dr. Flavin's opinion on the ground that her findings regarding Ms. De Bruin's postural limitations were "excessive in light of the modest physical examination findings during medical visits." *Id*. at 23. As noted above, Dr. Flavin found that Ms. De Bruin "should never be involved in climbing, balancing, stooping, kneeling, crouching, or crawling secondary to her chronic axial low back pain." *Id*. at 448. Ms. De Bruin notes that Dr. Flavin's opinion is not contradicted by opinions of any treating or examining doctors and was based on Dr. Flavin's own objective findings. She further contends that the ALJ failed to identify any other comprehensive orthopedic evaluations that showed she is capable of performing postural activities required for any sort of work.

Upon review of the record as a whole, the Court concludes that the ALJ did not err in stating that the postural limitations assessed by Dr. Flavin are inconsistent with the findings of Ms. De Bruin's providers, who noted mostly normal objective findings upon examination. *Id*. at 20-23. In discussing the credibility of Ms. De Bruin's allegations regarding her physical limitations (discussed below), the ALJ noted that she "attended extensive medical visits during the relevant period but few specifically related to the back," and proceeded to discuss specific medical examinations and to detail the objective findings. *Id*. at 21. In doing so, the ALJ acknowledged

1   that Ms. De Bruin's physicians documented tenderness in the low back, sometimes noted positive

2   straight-leg raising tests, and in at least one instance, found that Ms. De Bruin had a reduced range

3   of motion.  Nevertheless, the ALJ correctly noted that records also show that Ms. De Bruin

4   reported walking daily, and that examinations revealed normal gait, heel walking, toe walking,

5   lower extremity strength and sensation, as well as negative straight-leg raising tests.  *Id*. at 21-22,

6   500-504, 536-543, 586-597, 626-627, 653, 656-58, 667-669, 711-725, 742-786, 832-840, 859-884.

7          Ms. De Bruin argues that "a previous recitation in the [ALJ's] decision of selected portions

8   of the medical evidence" (Dkt. No. 24 at 5) does not constitute a specific and legitimate reason for

9   discrediting Dr. Flavin's opinion.  *See Ryan v. Comm'r of Soc. Security*, 528 F.3d 1194, 1198 (9th

10  Cir. 2008) (stating that "a reviewing court must consider the entire record as a whole and may not

11  affirm simply by isolating a specific quantum of supporting evidence.") (internal quotations

12  omitted).  A reasonable reading of the ALJ's decision, however, is that the ALJ incorporated his

13  findings of the medical records in the discussion of Dr. Flavin's opinion.  Here, the Court notes

14  that although the ALJ apparently did not mention a subsequent February 2015 MRI of Ms. De

15  Bruin's lumbar spine indicating nerve root involvement at the L5-S1 segment, Ms. De Bruin's

16  physician described the matter as a "mild L5-S1 disc bulge" and otherwise noted that Ms. De

17  Bruin's "lumbar spine MRI was stable."  AR 2621.  While Ms. De Bruin seems to suggest that the

18  ALJ may have cherry-picked the medical evidence, she does not substantiate that assertion with

19  any evidence or argument.  Instead, Ms. De Bruin argues that the medical findings cited by the

20  ALJ do not contradict Dr. Flavin's "relatively modest limitation of four hours a day standing and

21  four hours a day walking, etc." or support the ALJ's conclusion that Dr. Flavin's findings are

22  "excessive."  Dkt. No. 24 at 5.  However, even "[w]here evidence is susceptible to more than one

23  rational interpretation, the ALJ's decision should be upheld."  *Ryan*, 528 F.3d at 1998.  Upon

24  review of the record as a whole, the Court finds that the ALJ provided a specific and legitimate

25  reason for partially discounting Dr. Flavin's opinion.

26         On this issue, Ms. De Bruin's motion for summary judgment is denied, and the

27  Commissioner's cross-motion is granted.

28

### 2.     Ahmed El-Sokkary, Psy.D.

On September 5, 2014, clinical psychologist Dr. El-Sokkary conducted a consultative psychiatric examination of Ms. De Bruin. AR 670-672. He stated that Ms. De Bruin "is able to care for hygiene, grooming, daily living activities, including light cooking and cleaning." *Id*. at 670. Dr. El-Sokkary further noted that at that time Ms. De Bruin lived with one of her daughters, who was then 15 years old, and was assisted by an older 23-year old daughter. *Id*.

Dr. El-Sokkary diagnosed "Generalized anxiety disorder, [Rule out] Dysthymic disorder." *Id*. at 672. Based on his examination, he opined that "from a strictly cognitive and emotional standpoint," Ms. De Bruin is able "to understand, remember, and perform simple tasks"; can "maintain a sufficient level of concentration, persistence, and pace to do basic work in an environment that [her] health condition would allow"; and is "able to appropriately interact with supervisors and co-workers at this time." *Id*. However, he stated that Ms. De Bruin "would have difficulty doing complex work in a competitive work setting." *Id*. He further noted that she "would have some difficulty from time to time in keeping a regular workday/workweek schedule without some brief intermittent interruptions from psychiatric symptoms." *Id*.

This last statement is the sole issue presented here. Ms. De Bruin argues that although the ALJ gave "great weight" to Dr. El-Sokkary's opinion, the ALJ committed reversible error by failing to incorporate into his RFC assessment Dr. El-Sokkary's statement about Ms. De Bruin's "difficulty from time to time in keeping a regular workday/workweek schedule without some brief intermittent interruptions," and by failing to provide any explanation for implicitly rejecting that portion of Dr. El-Sokkary's assessment. She further contends that the failure to account for this limitation is prejudicial because, in response to the ALJ's hypotheticals, the VE testified that being absent more than one day per month, needing to take an additional hour for breaks, and being off-task 20% of a workday would have precluded a finding that Ms. De Bruin can perform any work. *Id*. at 65-66.

As noted above, the ALJ determined that Ms. De Bruin has the RFC to perform light work with certain mental (and other) restrictions, including that she is limited to "perform[ing] simple,

routine tasks" and "mak[ing] simple decisions."[6]  *Id.* at 19.  The Commissioner does not appear to

dispute that ALJ did not expressly address Dr. El-Sokkary's opinion that Ms. De Bruin would

have "difficulty from time to time in keeping a regular workday/workweek schedule without some

brief intermittent interruptions from psychiatric symptoms."  Nevertheless, the Commissioner

contends that there was no error because the ALJ's RFC assessment is supported by medical

evidence, as well as by the opinions of the state agency reviewing consultants, whose opinions

were also given "great weight" by the ALJ.  Dkt. No. 23 at 6-7.  The Commissioner further

contends that, in any event, Dr. El-Sokkary's statement is vague and fails to identify any specific

functional limitations, and that any error in omitting that portion of his opinion from the RFC

assessment therefore is harmless.

     In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Ninth Circuit addressed

whether the ALJ erred by impermissibly rejected a medical source opinion that the claimant was

moderately limited in her abilities to perform at a consistent pace.  In that case, one physician

observed that the claimant had a "slow pace, both with thinking and her actions," and concluded

that she had moderately limited ability "to perform at a consistent pace without an unreasonable

number and length of rest periods" (as well as mild limitations in other mental functioning areas).

*Id.* at 1173.  That physician, however, did not assess whether the claimant could perform unskilled

work on a sustained basis.  *Id.*  Another doctor also identified similar pace limitations (as well as

moderate limitations in other mental functioning areas), but opined that the claimant could

perform "simple tasks."  *Id.*  In the RFC assessment, the ALJ did not explicitly note pace

limitations and determined that the claimant had the RFC "to perform simple, routine, repetitive

sedentary work, requiring no interaction with the public."  *Id.*  The claimant contended that the

ALJ's RFC assessment failed to accommodate the pace and other mental function limitations

identified by both physicians.

     The Ninth Circuit disagreed and held that the ALJ did not err by "translat[ing] [the

---

[6] The ALJ's RFC assessment also included limitations related to social functioning, i.e, Ms. De Bruin can occasionally interact with supervisors; cannot have public interaction; and can tolerate occasional interaction with co-workers, but not in tandem, team, or group settings.  AR 19.

claimant]'s condition, including the pace and mental limitations, into the only concrete restrictions available to him—[the second physician]'s recommended restriction to 'simple tasks.'" *Id*. at 1174. Here, the Ninth Circuit noted that the physicians' respective assessments were "consistent" with one another with respect to the claimant's ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." *Id*. The Court went on to hold that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. "[T]he Ninth Circuit and district courts in the Ninth Circuit have held that *Stubbs-Danielson* does not control in cases where the limitations relate to functional areas other than concentration, persistence, and pace, such as social functioning and attendance." *Panziera v. Berryhill*, No. 17-cv-02719-LHK, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (citing cases).

Citing *Hurley v. Astrue*, No. C-12-1993 EDL, 2013 WL 12125536 (N.D. Cal. Apr. 15, 2013), the Commissioner argues that an ALJ does not err where he "'properly consider[s] all of the limitations articulated by [an examining consultant] and appropriately translate[s] them into [his] RFC assessment,' which was consistent with the limitations that a State agency physician assessed." Dkt. No. 23 at 8 (quoting *Hurley*, 2013 WL 12125536 at *6). In *Hurley*, the plaintiff argued that although the ALJ gave "great weight" to the opinion of a psychological consultative examiner and credited the opinion that he could perform simple tasks and maintain day-to-day work activity, the ALJ improperly failed to address portions of the opinion that plaintiff was moderately limited in his ability to maintain regular attendance, perform work activities on a consistent basis, and work without special or additional supervision. *Id*. at *4. After reviewing *Stubbs-Danielson* and subsequent district court decisions, the *Hurley* court noted that *Stubbs-Danielson* "has been interpreted as endorsing a more general approach of allowing the ALJ to translate medical findings relating to mental limitations into 'concrete' work-related RFC restrictions." *Id*. at *5. Noting that the examining consultant's opinion was supported by the opinion of a state agency reviewing consultant, "who also found moderate limitations in activities including attendance and keeping to a schedule," the *Hurley* court concluded that "[t]he ALJ's

statement that [the examining consultant]'s limitations were consistent with those from other reviewing physicians, including [the state agency reviewing consultant], and her use of [the state agency reviewing consultant]'s RFC assessment, underscores the fact that the ALJ[] properly considered all of the limitations articulated by [the examining consultant] and appropriately translated them into her RFC assessment." *Id*. at *6.

The Commissioner's reliance on *Hurley* is misplaced. To the extent the Commissioner relies on *Hurley* for the proposition that *Stubbs-Danielson* may be construed as generally permitting an ALJ to "translate medical findings relating to mental limitations into 'concrete' work-related RFC restrictions," *see Hurley*, 2013 LW 12125536 at *5, the Commissioner's arguments sweep too broadly. As discussed above, more recent decisions have held that *Stubbs-Danielson* does not pertain to mental limitations such as social functioning and attendance.

Moreover, while the parties appear to dispute whether Dr. El-Sokkary's opinion truly is "vague" and even requires any "translat[ing]" under *Stubbs-Danielson*, the key issue is whether the ALJ's assessed limitations are consistent with those identified in the medical testimony. *See Stubbs-Danielson*, 536 F.3d at 1174. Here, the Commissioner points out that the ALJ found that the opinions of Dr. El-Sokkary and those of the state agency reviewing consultants were consistent with medical evidence indicating that Ms. De Bruin's anxiety is well-controlled with medication. AR 24. He further argues that the ALJ's RFC limitations are supported by evidence demonstrating that Ms. De Bruin "did not have significant deficits in concentration, persistence, or pace in her mental status examinations." Dkt. No. 23 at 7. That evidence was cited by the ALJ in support of the ALJ's own finding, at step two of the sequential analysis, that Ms. De Bruin is moderately limited with respect to concentration, persistence and pace. *Id*. at 18. Aside from Ms. De Bruin's functional report, and Dr. El-Sokkary's own report, the cited evidence includes the November 15, 2010 medical source statement of Dr. Wendy McCray, whose opinion the ALJ gave "little weight." *Id*. at 18, 24.

While the Commissioner argues that Dr. El-Sokkary's opinion is otherwise consistent with the state agency reviewing consultants' opinions in a number of ways, what the Commissioner does *not* point out is that Dr. El-Sokkary's opinion that Ms. De Bruin would have "*difficulty from*

*time to time*" keeping a regular work schedule, appears to be potentially at odds with the conclusions of the state agency reviewing consultants, who concluded that she is "*[n]ot significantly limited*" in "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." AR 672, 81, 116 (emphasis added). The Court notes that the state agency reviewing consultants also concluded that Ms. De Bruin is moderately limited in her ability "[t]o *complete a normal workday and workweek* without interruptions from psychologically based symptoms and to *perform at a consistent pace without an unreasonable number and length of rest periods.*" *Id.* at 82, 117 (emphasis added). But the ALJ did not discuss or explain whether and to what extent the opinions of Dr. El-Sokkary and the state agency reviewing consultants address the same or similar limitations, or whether they are consistent or inconsistent.

Accordingly, the Court concludes that the ALJ erred in purporting to give Dr. El-Sokkary's opinion "great weight," but failing to adequately address, without any explanation, all of the apparent limitations noted in Dr. El-Sokkary's report. Ms. De Bruin contends that the error is prejudicial because the VE testified that being absent more than one day per month, needing to take an additional hour for breaks, and being off-task 20% of a workday would have precluded a finding that Ms. De Bruin can perform any work. AR 65-66. The Commissioner argues that Dr. El-Sokkary never opined about such limitations. However, the ALJ did not expressly credit or discuss that portion of Dr. El-Sokkary's opinion or even indicate whether the ALJ viewed it as expressing a functional limitation, and the Court "reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

On this issue, Ms. De Bruin's motion for summary judgment is granted, and the Commissioner's cross-motion is denied.

**B.     The ALJ's Assessment of Ms. DeBruin's Symptom Testimony**

As noted above, the ALJ found that Ms. De Bruin has the following severe medically determinable impairments: degenerative disc disease, arrhythmias and anxiety disorder. AR 17. Ms. De Bruin contends that the ALJ failed to provide clear and convincing reasons, supported by

substantial evidence, for partially discrediting her statements as to the intensity, persistence and limiting effects of her symptoms.

Ms. De Bruin submitted an Adult Function Report and also testified at the administrative hearing. She stated that she has pain from her lower to mid-back that radiates through her hips, buttocks and thighs, down to her toes, as well as numbness in her legs. She acknowledged that medications help relieve her pain, but never fully take the pain away. According to Ms. De Bruin, the pain affects her sleep; and due to pain and fatigue, she spends 60-70% of the day lying down; cannot tolerate sitting for more than 30 minutes at a time; and cannot stand for very long before she begins to feel ill. She noted that medications "put[] [her] in a fog," and that she drives only when she has to, for short distances (i.e. 12 minutes driving time), to doctor's appointments and to pick up medications at the pharmacy. She further testified that she cannot lift a gallon of milk, and noted difficulties bending, squatting, reaching and bending. Ms. De Bruin stated that she can dress herself, but needs help tying her shoes; and that she can bathe herself, but has difficulty with her backside and with shaving. *Id*. at 43-44, 48-49, 53-54, 56, 268.

In his decision, the ALJ noted that Ms. De Bruin testified that she stopped working in April 2009 due to back injury. He also considered Ms. De Bruin's statements that she "experienced pain in the mid-back that radiated down the right lower extremity with associated burning and numbness"; that "she had to lay [sic] down 60 to 70 percent of the day"; and that "she tried back injections but that they did not relieve her symptoms." *Id*. at 20.

In partially discounting the credibility of Ms. De Bruin's testimony about her symptoms, the ALJ found that Ms. De Bruin's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. As such, the ALJ credited Ms. De Bruin's statements "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." *Id*.

An ALJ must conduct a two-step analysis in assessing subjective testimony. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments

that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Id*. (*quoting Smolen*, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Id*. (*quoting Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quotations and citation omitted).

An ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen*, 80 F.3d at 1284. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (*quoting Thomas*, 278 F.3d at 959).

Here, the ALJ made no finding of malingering and therefore was required to provide specific, clear and convincing reasons for discounting Ms. De Bruin's statements regarding her symptoms. *Tommasetti*, 533 F.3d at 1039.

Ms. De Bruin contends that in partially discounting the credibility of her statements, the ALJ simply provided "a generic statement that anything that did not comport with his residual functional capacity was inconsistent with the record . . ." Dkt. No. 20 at 10. That is a mischaracterization of the ALJ's decision. As noted above, the ALJ stated he partially discounted

Ms. De Bruin's statements to the extent they were inconsistent "with the objective medical and other evidence." AR 20.

Ms. De Bruin nevertheless contends that the ALJ failed to provide a clear and convincing reason for discrediting her statements. As discussed below, the ALJ provided sufficient reasons for discounting Ms. De Bruin's testimony as to the intensity, persistence and limiting effects of her mental health symptoms. However, he did not do so with respect to Ms. De Bruin's physical symptoms.

With respect to Ms. De Bruin's mental health symptoms, the ALJ noted a lack of mental health complaints and treatment with a mental health professional during the relevant period; the absence of any records of hospitalization for acute mental symptoms; and medical records indicating that her anxiety was controlled with medication. *Id.* at 23-24. For example, an August 9, 2011 treatment note states that Ms. De Bruin took Lorazepram for anxiety, but that she reported she did not "need[] to take it as often lately as she gets further away from her marriage separation which was now three years ago." *Id.* at 485. A February 24, 2014 treatment note states that Ms. De Bruin reported that Lorazepram helped, and the ALJ correctly observed that Ms. De Bruin's most recent medication list showed that her Lorazepram prescription remained unchanged. *Id.* at 717, 961. Upon review of the record as a whole, the Court concludes that these are sufficient reasons, supported by substantial evidence, for discounting Ms. De Bruin's mental health testimony. *See* SSR 16-3P, 2017 WL 5180304 (stating that in evaluating symptoms, an ALJ may consider inconsistencies in the objective medical evidence, an individual's statements to medical sources, medical source records regarding responses to treatment, and the type, dosage and effectiveness of any medication an individual has taken to alleviate symptoms).

As for Ms. De Bruin's physical functionality, the Commissioner argues that the ALJ correctly concluded that her testimony was not supported by the objective medical evidence, which showed, for example, only mild degenerative changes in her spine and largely normal physical examinations. AR 21, 500-504, 536-543, 586-597, 626-627, 653, 656-58, 667-669, 711-725, 742-786, 832-840, 859-884. The ALJ made similar findings with respect to Ms. De Bruin's complaints of palpitations, irregular heart rate and tachycardia. *See id.* at 22, 393-440, 514-517,

586-597, 653-54, 656-661, 1530-1811, 1530-1811, 1848-1905.

Ms. De Bruin correctly notes, however, that minimal or negative findings, or inconsistencies in the objective medical evidence cannot be the sole basis for discounting pain testimony. *Burch*, 400 F.3d at 681; SSR 16-3P. The Commissioner argues that the ALJ also discounted Ms. De Bruin's allegations in view of her daily activities. Here, the Commissioner notes that in determining whether Ms. De Bruin had any severe medically determinable impairments at step two of the sequential analysis, the ALJ concluded that Ms. De Bruin has only mild or moderate limitations, based on evidence that she took care of her children, was independent in her own self-care, prepared meals and shopped, drove a car, and managed her own finances. AR 18-19. It is not clear that Ms. De Bruin's daily activities were, in fact, a basis for the ALJ's decision to partially discount her testimony. Even if the Court were to infer that the ALJ's evaluation was based on the identified daily activities, the ALJ failed to provide clear and convincing reasons for doing so.

While a claimant's daily activities may be considered in evaluating the claimant's testimony regarding her symptoms, those activities may be grounds for an adverse credibility determination only in limited circumstances: (1) where the activities are incompatible with the severity of the alleged symptoms or (2) where a claimant is able to spend a substantial part of the day engaged in activities that are transferable to a work setting. *Orn*, 495 F.3d at 639. If, despite claims of pain, "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). At the same time, the "Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id*. And merely because a disability plaintiff carries on certain daily activities "does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ made no specific findings as to either the incompatibility of Ms. De Bruin's symptoms with her daily activities, or about the transferability of the identified activities to a work setting.[7] Although the record indicates that Ms. De Bruin is independent in her own self-care, prepares meals and shops, drives a car, and manages her own finances, she also testified that she lives with, and receives help from, two of her daughters (who were 17 and 21 years old at the time of the administrative hearing); prepares only "[e]asy quick fix meals"; shops mostly online; shops in stores as needed (and requires someone to accompany her); and drives only if she has to, for short distances to the doctor or the pharmacy. AR 43-44, 48-49, 53-54, 56, 267-274. Accordingly, the mere fact that Ms. De Bruin carried on these activities does not constitute substantial evidence to support the ALJ's decision to discount her statements as to the severity of her symptoms—they may simply be indicia of an attempt to lead a normal life within the boundary of those alleged limitations.

On this issue, Ms. De Bruin's motion for summary judgment is granted, and the Commissioner's cross-motion is denied.

### C. Mr. Ligons's Third-Party Function Report

Mr. Ligons is Ms. De Bruin's friend who submitted an Adult Function Report describing Ms. De Bruin's functionality. AR 275-282. Ms. De Bruin argues that the ALJ erred by failing to provide any reason for apparently not giving Mr. Ligons's statement any weight. According to Ms. De Bruin, properly crediting Mr. Ligons's report would have required a more restrictive RFC determination.

To reject a third-party's report of a claimant's impairments, an ALJ must give reasons that are germane to each witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Although the ALJ's decision indicates that he considered Mr. Ligons's report (AR 20), the Commissioner acknowledges that the ALJ did not expressly explain how he evaluated Mr. Ligons's statement. Dkt. No. 23 at 12. The Commissioner nonetheless argues that any error is harmless because Mr.

---

[7] As noted above, the ALJ concluded later in the sequential analysis that transferability of skills is immaterial. AR 25.

Ligons essentially noted the same difficulties alleged by Ms. De Bruin and, in the Commissioner's

view, the ALJ properly discounted the credibility of Ms. De Bruin's allegations.  For the reasons

discussed above, however, the Court finds that the ALJ did not provide sufficient reasons for

discrediting Ms. De Bruin's allegations as to her physical symptoms.  Accordingly, the Court

declines to find that the ALJ's failure to explain whether and why he may have also rejected Mr.

Ligons's statements is harmless.

On this issue, Ms. De Bruin's motion for summary judgment is granted, and the

Commissioner's cross-motion is denied.

## V.      DISPOSITION

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand

to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*,

880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d

1090, 1099 (9th Cir. 2014)).  That is because "an ALJ's failure to provide sufficiently specific

reasons for rejecting the testimony of a claimant or other witness does not, without more, require

the reviewing court to credit the testimony as true."  *Treichler*, 775 F.3d at 1106.

The Court may order an immediate award of benefits only if three conditions are met.

First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting

evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison v. Colvin*, 759

F.3d 995, 1020 (9th Cir. 2014)).  Next, the Court "determine[s] 'whether there are outstanding

issues that must be resolved before a determination of disability can be made . . . . and whether

further administrative proceedings would be useful.'"  *Id.* (quoting *Treichler*, 775 F.3d at 1101).

"When these first two conditions are satisfied, [the Court] then credit[s] the discredited testimony

as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as

to disability."  *Id.* (citing *Treichler*, 775 F.3d at 1101).  Even when all three conditions are

satisfied and the evidence in question is credited as true, it is within the district court's discretion

whether to make a direct award of benefits or to remand for further proceedings when the record

as a whole creates serious doubt as to disability.  *Id.* at 1045.  As explained by the Ninth Circuit,

"[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception

22

to the well-established ordinary remand rule." *Id*. at 1044.

In the present case, the first condition is met because the Court has found that the ALJ erred by failing to account for all of the apparent limitations opined by Dr. El-Sokkary; to offer sufficient reasons for partially discounting Ms. De Bruin's allegations as to her physical functionality; and to offer any explanation for apparently rejecting Mr. Ligons's statement. However, because the ALJ did not fully or properly evaluate this evidence, there remain outstanding issues to be resolved, including the ALJ's determinations regarding Ms. De Bruin's RFC and her ability to work. *See, e.g., Salaz v. Colvin*, 650 Fed. App'x 926 (9th Cir. 2016) (vacating the ALJ's RFC determination and remanding for further proceedings where the ALJ failed to give legally sufficient reasons for rejecting aspects of the claimant's treating physicians' opinions and for finding the claimant not fully credible); *Asmar v. Colvin*, No. 16-cv-01079-GPC-MDD, 2017 WL 3405688, at *11 (S.D. Cal., Aug. 9, 2017) (remanding for further proceedings where the ALJ did not properly assess the treating physicians' opinions and, thus, issues concerning the plaintiff's RFC and ability to work remained in the case); *Murphy v. Colvin*, No. 14-cv-03784-YGR, 2015 WL 6674815, at *13-14 (N.D. Cal., Nov. 2, 2015) (same). Accordingly, the Court will remand this matter for further proceedings.

## VI.    CONCLUSION

Based on the foregoing, Ms. De Bruin's motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated:   September 30, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge